<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAROLD DANIELSON,<br><br>         Plaintiff,<br><br>v.<br><br>CHESTER TOWNSHIP THROUGH ITS POLICE DEPARTMENT, et. al.,<br><br>         Defendants. | Civil Action No. 13-5427 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

As it relates to the instant motion, this case involves allegations that the New Jersey Highlands Water Protection and Planning Council ("Highlands Council"), and several of its members, violated Plaintiff's rights under, *inter alia*, the First Amendment of the United States Constitution when councilmembers interrupted Plaintiff during his public comments at a council meeting. Currently before the Court is a motion to dismiss Plaintiff's Second Amended Complaint filed by Defendants the Highlands Council, Chairman Jim Rilee and Councilmember Bruce James (hereinafter "Council Defendants") [Docket Entry No. 29]. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion is granted in part and denied in part.

1

## **BACKGROUND**[1]

On August 3, 2011, Plaintiff sought to speak at a public meeting of the Highlands Council (Sec. Am. Compl., ¶ 10). During a portion of the meeting set aside for public comments regarding a proposed resolution on Transfer of Development Rights ("TDRs"),[2] Plaintiff approached the podium to speak and was recognized by the chair, Defendant Jim Rilee. (*Id*., ¶ 13; 16). Plaintiff's comments were subject to a three-minute time limit. (*Id*., ¶ 12). According to the Second Amended Complaint, Plaintiff intended to address Defendant Bruce James's remark that "farmers" were "worse polluters" than "Brown Fields."[3] (*Id*., ¶ 14). According to the official minutes of the meeting, "Mr. James had stated that agricultural lands can contain numerous contaminants and be considered brownfields." (*Id*., ¶ 18).

About twenty four (24) seconds into Plaintiff's comments, Plaintiff was interrupted by Defendant James and Defendant Rilee. (*Id*., ¶ 19). In particular, Defendant Rilee interrupted Plaintiff by stating, "[t]his is about the TDR's." (*Id*., ¶ 21). Plaintiff attempted to continue, stating: "I have a question for Mr. James who went after the farmers for polluting." (*Id*., ¶ 22). Plaintiff was then interrupted by Defendant James, who said: "I didn't go after the farmers." (*Id*.). Plaintiff continued, stating: "You went after the farms. You said they were the biggest polluters. Why don't you get rid of the golf courses? They're the biggest polluters and the biggest water users. You wipe

---

[1] The following relevant facts are accepted as true for purposes of the instant motion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] TDR is defined in the Second Amended Complaint as a device that permits property owners to sell the rights to develop their land to others, thus restricting that land from further development; the proposed resolution concerned a TDR Feasibility Grant for the Town of Hackettstown. (Sec. Am. Compl., ¶ 16).

[3] The Second Amended Complaint defines "brownfields" as abandoned or underused industrial or commercial sites that are usually contaminated. (*Id*., ¶ 14).

them out and you wipe everything out." (*Id*.). Defendant Rilee then joked that he "does not play golf but played 'miniature golf;'" the Director of the Highlands Council cackled at this comment. (*Id*., ¶ 23). Plaintiff then stated, "I'm not done yet." (*Id*., ¶ 24). Defendant Rilee responded, "[y]ou are becoming adversarial toward the members," to which Plaintiff replied: "No. I'm becoming adversarial against the condition I was left in." (*Id*.). Defendant Rilee then stated, "I can appreciate that" and Plaintiff responded, "[n]o you can't. You don't appreciate it. You don't know." (*Id*.). Defendant Rilee then told Plaintiff that "he was finished and to sit down." (*Id*., ¶ 25). The Second Amended Complaint goes on to allege that Defendant Rilee "twice asked Plaintiff to yield the floor and to stop speaking." (*Id*., ¶ 51). Plaintiff also alleges that Defendant James "told Plaintiff that his comments were not on topic and that he should stop speaking and yield the floor." (*Id*., ¶ 27). When Plaintiff refused to "yield the floor," he was arrested by at least three Chester Township Police Officers. (*Id*., ¶ 19).

Based on "their prior communication about [Plaintiff]," there was "an understanding" between Defendant Rilee and the Chester Township Police Officers present at the meeting "that Plaintiff was to be watched, that Plaintiff had disrupted prior meetings of the Highlands Council, and that Defendant Rilee would signal to the Chester Police Officers if he desired [Plaintiff] to be removed from the meeting." (*Id*., ¶ 26). One attendee observed the Chester Police Officers watching to see who signed into the meeting's log book. (*Id*.). According to the Prosecutor for Chester Township, Brian W. Mason, Esq., "Mr. Danielson was arrested and charged based upon information provided to . . . [the arresting officer] by the Chair." (*Id*., ¶ 32). Further, no other person who spoke during the comment periods, including those whose statements were critical of the Council, was interrupted based on the subject matter of his or her statement. (*Id*., ¶ 55). One attendee addressed Defendant James' comment regarding brownfields without interruption, stating

3

that "he does not think Hackettstown has brownfields and to make a speculation is irresponsible." (*Id*., ¶ 28).

Plaintiff was subsequently charged in Chester Municipal Court with disrupting a public meeting. (*Id*., ¶ 34). In his November 9, 2011 correspondence to the Highlands Council, Prosecutor Mason noted that "[u]ntil interrupted [Plaintiff] spoke on point. I fail to see why [Plaintiff] was told that he was finished. Moreover, I fail to see a valid basis to prosecute [Plaintiff] for disrupting the meeting." (*Id*.). The charge filed against Plaintiff was ultimately dismissed. (*Id*.).

In light of the foregoing facts, Plaintiff initiated this matter on July 31, 2013 by filing a Complaint in the Superior Court of New Jersey. Defendants removed this matter to this Court on September 11, 2013. This Court's jurisdiction is premised on 28 U.S.C. §§ 1331, 1367.

Count One of Plaintiff's Second Amended Complaint alleges a claim of excessive force pursuant to 42 U.S.C. § 1983 as against the Police Officer Defendants. Count Two contains a § 1983 claim against Councilmembers James and Rilee (hereinafter the Individual Council Defendants), in their official capacities, based upon alleged violations of Plaintiff's Fourteenth Amendment right to equal protection and his First Amendment right to freedom of speech. Count Three alleges a § 1983 *Monell* claim as against Defendant Chester Township. Count Four alleges a § 1983 *Monell* claim as against the Highlands Council and the Individual Council Defendants. Count Five alleges a violation of the New Jersey Civil Rights Act ("NJCRA") as against all Defendants. Count Six purports to assert a § 1983 and NJCRA claim against the Individual Council Defendants in their individual capacities, based upon alleged violations of Plaintiff's Fourteenth Amendment right to equal protection and his First Amendment right to freedom of speech.

4

The Council Defendants have now filed a motion to dismiss Counts Two, Four, Five, and Six of Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). With this framework in mind, the Court turns now to Defendants' motion.

## **DISCUSSION**

A.    **Count Two—§ 1983 Equal Protection and First Amendment Claims**

Count Two contains two separate claims against the Individual Council Defendants, Bruce James and Jim Rilee (in their official capacities), both of whom are alleged to have been councilmembers present at the August 3, 2011 council meeting.  In particular, Count Two alleges a § 1983 claim against James and Rilee  based upon their alleged violations of Plaintiff's Fourteenth Amendment right to equal protection and  his First Amendment right to freedom of speech.

The Court begins by noting that Defendants seek dismissal of both § 1983 claims as against Defendant James on the basis that Councilmember James' "total involvement as alleged in Plaintiff's Second Amended Complaint [was] to clarify in response to a question directed at him by Plaintiff that he did not say the words attributed to him by Plaintiff." (Def. Reply at 4).  While the Court agrees, as a general matter, that liability under § 1983 requires a "personal involvement" in the deprivation of a constitutional right,[4] the Second Amended Complaint alleges more than Defendants suggest.  The Second Amended Complaint alleges that Defendant James: (1) made a statement that "farmers" were "worse polluters" than brownfields in the State of New Jersey, (2) before Plaintiff's time was up, he told Plaintiff to "stop speaking and yield the floor" after Plaintiff stated "I have a question for Mr. James who went after the farmers for polluting," and (3) Defendant James did not interrupt any other speakers on the day in question, including those whose statements were critical of the Council.  (Sec. Am. Compl., ¶¶ 14, 22, 27, 55).  Such allegations allow the Court to draw the reasonable inference that Defendant James restricted Plaintiff's speech

---

[4] *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 76 (3d Cir. 2011).

on the basis of his viewpoint (concerning the famers), that Defendant James treated Plaintiff differently from other speakers on the day in question (by asking him to stop speaking), and that there was no rational basis for the difference in treatment (given that he spoke generally about the topic at hand and during the allotted amount of time).  In light of the foregoing, the Court finds that Plaintiff has sufficiently alleged Defendant James' personal involvement in the alleged deprivation of his constitutional right(s).

### 1. First Amendment Claim

As the Court held in its previous Opinion, the parties agree that the public portion of a meeting of a governmental body, like the Highlands Council, is a limited public forum for First Amendment purposes.  *See Galena v. Leone*, 638 F.3d 186, 198 (3d Cir. 2011) ("Traditional public forums include public streets, parks, and other public areas traditionally devoted to assembly and debate . . .  In contrast to traditional and designated public forums, a governmental entity creates a limited public forum when it provides for 'a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.' ").  The parties also agree that, in a limited public forum, "to avoid infringing on First Amendment rights, the governmental regulation of speech only need be viewpoint-neutral and 'reasonable in light of the purpose served by the forum[.]' " *Id*. (quoting *Good News Club v. Milford Cent. Sch*., 533 U.S. 98, 107 (2001)).  Stated differently, governmental entities which have established limited public forums "may impose restrictions on speech that are reasonable and viewpoint-neutral." *Christian Legal Soc. Chapter of the Univ. of California, Hastings College of the Law v. Martinez*, 130 S. Ct. 2971, 2984 n. 11 (2010).  Thus, in order to state a facially plausible First Amendment claim based upon the alleged restrictions on speech imposed on him during the August 3, 2011 council meeting, Plaintiff must

allege, *inter alia*, facts establishing that restrictions were imposed on his speech based upon his viewpoint.  *See, e.g., Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 279 (3d Cir. 2004) ("Government facilities that are not committed to public communicative activity may regulate speech by the general public so long as that regulation is reasonable and not based on opposition to a particular viewpoint.").

This Court noted, in its prior Opinion, that it was unclear whether Plaintiff was speaking about the topic at hand—Transfer Development Rights ("TDR")—at the time of the alleged interruptions.  *See generally Rowe v. City of Cocoa,* 358 F.3d 800, 803 (11th Cir. 2004) (per curiam) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand.").  The Second Amended Complaint now alleges that "Plaintiff attempted to speak about Defendant James' comment that he made just a few minutes earlier that compared farmland to brownfields, but ultimately this was impossible because he was being interrupted first by Defendant James and then by Defendant Rilee." (Sec. Am. Compl., ¶¶ 21, 27).  The Second Amended Complaint also alleges that on November 9, 2011, the Prosecutor for Chester Township, Mr. Mason, wrote a letter to the New Jersey Highlands Council wherein he stated, in relevant part, that "[f]rom the audio, [Plaintiff] spoke less than three (3) minutes.  Until interrupted he spoke on point." (Id., ¶ 34).  In light of these allegations, Plaintiff has now alleged sufficient facts which allow this Court to draw the reasonable inference, for purposes of this motion, that Plaintiff *was* generally speaking about the topic at hand during the alleged interruptions by the Individual Council Defendants.

This Court also previously noted Defendants' position that interrupting a speaker does not constitute an unconstitutional restriction on speech in a limited public forum.  The Second Amended Complaint now alleges more than a mere interruption.  In particular, the Second

8

Amended Complaint now alleges that Defendant Rilee told him "he was finished and to sit down." (*Id*., ¶ 25). The Second Amended Complaint goes on to allege that Defendant Rilee "twice asked Plaintiff to yield the floor and to stop speaking." (*Id*., ¶ 51). It also alleges that Defendant James "told Plaintiff that his comments were not on topic and that he should stop speaking and yield the floor." (*Id*., ¶ 27).

Thus, the Second Amended Complaint now alleges that: (1) Plaintiff attempted to speak about the topic at hand—in particular, he wanted to express his disagreement with Defendant James' comment that farmers were worse polluters than brownfields, which was made in the context of a discussion on TRDs, and (2) Both Rilee and James restricted Plaintiff's speech in this regard because he disagreed with their viewpoint. In light of these allegations, the Court finds that Plaintiff has alleged sufficient facts which, if accepted as true, allow the Court to draw the reasonable inference that Defendants Rilee and James are liable for the misconduct alleged—namely, restricting Plaintiff's speech on the basis of his viewpoint. Although the arguments raised by the Individual Council Defendants are well taken, the standard on a motion to dismiss is not whether Plaintiff's claim(s) will ultimately succeed or even the probability of their success; rather, in order to state a claim for purposes of Rule 12(b)(6), Plaintiff must simply allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of such claim(s). *Twombly*, 550 U.S. at 556. Defendants do not claim that Plaintiff has failed to meet this pleading standard or that they have failed to receive adequate notice of the nature of the First Amendment claim being asserted against them; rather, Defendants urge the Court to test the actual merits of Plaintiff's First Amendment claim at this time. This is inappropriate on a Rule 12(b)(6) motion, particularly before the parties have had the benefit of discovery. *See generally Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.' ") (quoting *Twombly*, 550 U.S. at 570).

Thus, in light of the foregoing, the Court finds that Plaintiff has pled a facially plausible First Amendment violation claim as against the Individual Council Defendants. *See generally Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Twombly*, 550 U.S. at 556). Defendants' motion to dismiss this aspect of Count Two is denied.

### 2. Equal Protection Claim

Turning now to Plaintiff's Equal Protection claim against the same defendants, as previously held, a plaintiff may state a claim for a violation of the Equal Protection clause under a "class of one" theory when he "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). To state a claim under the "class of one" theory, a plaintiff must at least allege that: "(1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (citation omitted). "To survive rational basis review, a classification must be 'rationally related to a legitimate governmental objective.' " *Cooper v. Menges,* 541 Fed. Appx. 228, 233 (3d. Cir. 2013).

The Second Amended Complaint now alleges that, based on "their prior communication about [Plaintiff]," there was "an understanding" between Defendant Rilee and the Chester Township Police Officers present at the meeting "that Plaintiff was to be watched, that Plaintiff

10

had disrupted prior meetings of the Highlands Council, and that Defendant Rilee would signal to the Chester Police Officers if he desired [Plaintiff] to be removed from the meeting." (Sec. Am. Compl., ¶ 26). It is further alleged that one attendee observed the Chester Police Officers watching to see who signed into the meeting's log book. (*Id*.). According to the Prosecutor for Chester Township, Mr. Mason, "Mr. Danielson was arrested and charged based upon information provided to . . . [the arresting officer] by the Chair." (*Id*., ¶ 32). It is further alleged that no other person who spoke during the comment periods, including those whose statements were critical of the Council, was interrupted based on the subject matter of his or her statement. (*Id*., ¶ 55). In fact, according to the Second Amended Complaint, one attendee addressed Defendant James' comment regarding brownfields without interruption, stating that "he does not think Hackettstown has brownfields and to make a speculation is irresponsible." (*Id*., ¶ 28).

Thus, the Second Amended Complaint now alleges the following facts relevant to this claim: (1) Plaintiff attempted to address a comment made by Defendant James that farmers were worse polluters than brownfields (which was, in turn, made by James in the context of a discussion on TRDs); (2) Plaintiff was asked by both James and Rilee to sit down and/or to yield the floor; (3) no other person who spoke during the comment periods, including those whose statements were critical of the Council, was interrupted or asked to sit down; and (4) the reason Plaintiff was treated differently—i.e., asked to "sit down"—had to do with prior communications between Defendant Rilee and the Chester Township Police Officers concerning the Plaintiff. *See, e.g*., Sec. Am. Compl., ¶¶ 26, 32. Based on these facts, the Court finds that Plaintiff has now pled a facially plausible class of one equal protection claim as against the Individual Council Defendants. In particular, Plaintiff has alleged sufficient facts which, if accepted as true, allow the Court to draw the reasonable inference that Defendants Rilee and James are liable for the misconduct alleged—

11

namely, that they intentionally treated Plaintiff differently from other speakers on the day in question and that the difference in treatment had to do with some prior understanding between Defendant Rilee and the Chester Police Officers vis-à-vis the Plaintiff. Although discovery may ultimately reveal that any difference in treatment was rationally related to a legitimate governmental objective, suffice it to say that Plaintiff has succeeded in stating a facially plausible class of one equal protection claim against Defendants Rilee and James at this time.

### B. Count Four—*Monell* Claim Against Highlands Council and Individual Council Members

Count Four purports to assert a § 1983 *Monell* claim against the Highlands Council based on the following facts: "Defendant Highlands Council, through Chairman Jim Rilee, developed and maintained policies and customs exhibiting deliberate indifference to the Constitutional Rights of Plaintiff." (Am. Compl., ¶ 41). In particular, Count Four alleges that "as the Chairman of the Highlands Council, Defendant Rilee is responsible for regulating Highlands Council meetings. He is the highest and sole policy maker with respect to regulating Highlands Council meetings. On August 3, 2011, Defendant Rilee both interrupted Plaintiff based on his speech and permitted Defendant James to interrupt Plaintiff based on Plaintiff's speech." (*Id.*, ¶ 42).

Generally, municipalities or other local government units may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation. *See Monell*, 436 U.S. at 694. "An official with policymaking authority can create official policy, even by rendering a single decision." *McGreevy v. Stroup,* 413 F.3d 359, 367-368 (3d Cir. 2005). When a single decision is the basis of the alleged constitutional violation, however, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy

with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–484 (1986). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481-482.

The Court finds that Count Four, as currently pled, is still deficient for various reasons. First, as this Court has previously held, *Monell* liability can only be imposed on a municipality. *See Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000) ("The Supreme Court in *Monell* held that a municipality can be held liable as a person under section 1983 when it unconstitutionally implements or enforces 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the officers of that municipality"); *see generally Bd. of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 417 (1997) ("In assigning municipal liability under Monell, we accordingly distinguish an act of a municipal agent without independent authority to establish policy from the act of one authorized to set policy under local law."). Plaintiff already asserts § 1983 claims against the Individual Council Defendants—in their official and individual capacities—for their alleged role in the deprivation of his constitutional rights. *See generally* Counts Two and Six of the Second Amended Complaint. On this basis, Plaintiff's *Monell* claim was previously dismissed, with prejudice (as duplicative) as to the Individual Council Defendants. This Court's prior decision is now law of the case; thus, Count Four of Plaintiff's Second Amended Complaint is dismissed *with* prejudice as to the Individual Council Defendants.

To the extent this claim is asserted against the Highlands Council, it continues to be deficient. In particular, this Court previously dismissed this claim on the basis that Plaintiff's complaint failed to allege any particular policy or custom that was actually adopted and promulgated by the Highlands Council. Count Four continues to allege the existence of unspecified "policies and customs exhibiting deliberate indifference to the Constitutional Rights

13

of Plaintiff." (Sec. Am. Compl., ¶ 61). As the Court has previously stated, this statement is entirely conclusory and thus does not benefit from the presumption of truth. *See generally Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").

Having carefully considered the arguments raised in support of and in opposition to dismissal of this claim, the Court notes that Plaintiff has not made any material changes to this claim, despite the deficiencies pointed out by the Court in its two prior Opinions. The crux of this claim is that Defendant Rilee is the "highest and sole policy maker with respect to the Highlands Council" and that he interrupted Plaintiff during his public comment at an August 3, 2011 meeting. (Am. Compl., ¶ 62). As this Court has previously held, although it is true that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481-482. Count Four does not specify—much less with sufficient factual support—"the action ordered" or official policy created by Defendant Rilee, from among various alternatives. *Id.; McGreevy*, 413 F.3d at 367-368. Again, at most, the Second Amended Complaint alleges that Defendant Rilee: (1) was the Chairman of the Highlands Council, (2) was, by virtue of his position, in charge of presiding over the August 3, 2011 public meeting of the Highlands Council, and (3) interrupted Plaintiff two to three times during the course of his three minute comment and ultimately asked him to stop speaking and/or to yield the floor because he disagreed with James' statement that farmers were worse polluters than brownfields. These are the same allegations that form the basis of Plaintiff's first amendment claim against Defendant Rilee, as discussed above.

Even assuming, *arguendo*, that the Second Amended Complaint could be construed as alleging that Defendant Rilee possessed certain discretion in overseeing the meeting by virtue of his position as Chairman, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-482.  Count Four fails to pass this threshold.  Defendant's motion to dismiss Count Four is granted.  Because the Court has already given Plaintiff two opportunities to cure the pleading deficiencies in this claim, this claim is now dismissed *with* prejudice.

C. **Count Five—Violation of the New Jersey Civil Rights Act**

In addition to bringing claims pursuant to § 1983, Plaintiff also brings a claim under the New Jersey State Constitution through the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6–2, in Count Five of his Second Amended Complaint.  A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion or force.*" Felicioni v. Admin. Office of Courts*, 404 N.J. Super. 382, 400, 961 A.2d 1207 (App. Div. 2008).  The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey,* No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."); *see generally Hedges*

*v. Musco*, 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

As to the Council Defendants, there is no dispute that Plaintiff's NJCRA claim (Count Five) and § 1983 claim(s) (Count Two and Four) are based on the same underlying facts and theories. *See* Sec. Am. Compl., ¶ 65 (incorporating facts from Count Two and Four into Count Five). Having concluded that the Second Amended Complaint states a viable First Amendment and equal protection claim as against Defendants Rilee and James, Count Five may proceed as to these Defendants under the same theory, for the reasons discussed above. Having concluded that the Second Amended Complaint fails to state a viable *Monell* claim against the Highlands Council, Count Five is dismissed *with* prejudice as to the Highlands Council, for the reasons discussed above.

Defendants' motion to dismiss Count Five is therefore granted in part and denied in part. Count Five is dismissed with prejudice as to the Highlands Council. Count Five may proceed as to Defendants Rilee and James (based upon their alleged violations of Plaintiff's First Amendment and equal protection rights).

### D.     Count Six -- § 1983 and NJCRA Claims Against James and Rilee Individually

The Council Defendants move to dismiss this claim on the basis that James and Rilee are entitled to qualified immunity for their actions.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "For qualified immunity to attach, an official must demonstrate his conduct was objectively reasonable." *Id.* at

818–19. Qualified immunity is unavailable to a defendant government official if plaintiff's complaint meets two prongs: (1) the facts alleged by plaintiff show the violation of a constitutional right; and (2) the plaintiff's constitutional right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013).

As discussed above, Plaintiff has sufficiently alleged facially plausible § 1983 claims against Defendants Rilee and James in their official capacities—that is, Plaintiff has sufficiently alleged that Defendants Rilee and/or James violated Plaintiff's Fourteenth Amendment right to equal protection and his First Amendment right to freedom of speech. The Court must next determine whether the constitutional rights at issue were clearly established at the time of the alleged violation. For a right to be clearly established for the purposes of qualified immunity, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quotations omitted); *see also Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) ("[T]o overcome the assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly established one."). "In considering whether qualified immunity applies, a court must [view the facts] . . . in the light most favorable to the plaintiff." *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006).

As a general matter, it is—and was on the night in question—clearly established that "even if a limitation on speech is a reasonable time, place, and manner restriction, there is a First Amendment violation if the defendant applied the restriction because of the speaker's viewpoint."

17

*Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011). When the factual allegations in this case are viewed in Plaintiff's favor, one can reasonably infer that Rilee and James restricted Plaintiff's speech—by allegedly telling him to stop speaking and/or to yield the floor—during the August 3, 2011 council meeting because he disagreed with their viewpoint (that "agricultural lands" . . . [can] be considered brownfields."). In light of these factual allegations, the Court concludes that Plaintiff has sufficiently pled a violation of a clearly established constitutional right.

It was also clearly established on the date in question that an individual's rights under the Equal Protection clause are violated when "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). When the factual allegations in this case are viewed in Plaintiff's favor, one can reasonably infer that Rilee and James intentionally treated Plaintiff differently from other speakers on the day in question—by allegedly telling him to stop speaking and/or to yield the floor—and that the difference in treatment had to do with some prior understanding between Defendant Rilee and the Chester Police Officers vis-à-vis the Plaintiff. In light of these factual allegations, the Court concludes that Plaintiff has sufficiently pled a violation of a clearly established constitutional right.

Defendants' motion to dismiss this claim on the basis of qualified immunity is therefore denied at this juncture. Although the Court recognizes that the question of whether or not Plaintiff has shown a violation of a clearly established constitutional right is generally a legal question,[5] the Court nevertheless concludes, based on the particular circumstances of this case, that the factual

---

[5] *See Walter v. Pike County, Pa.,* 544 F.3d 182, 190 (3d Cir. 2008) ("Qualified immunity is also an 'entitlement not to stand trial or face the other burdens of litigation,' but is 'conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.' ").

record must be developed before the Court can conclusively determine whether a constitutional violation has occurred. *See generally Newland v. Reehorst*, 328 Fed. Appx. 788, 791 (3d Cir. 2009) ("There is no mandatory procedure that courts must follow in determining whether qualified immunity is warranted in any particular case."). This is particularly so because discovery may reveal that the facts are not as Plaintiff now alleges. For example, as previously stated, discovery may show that any restrictions placed on Plaintiff's speech were not based on his disagreement with the views of the Individual Council Members, but rather, based upon his disruptive nature. *See, e.g., Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (3d Cir. 1995) (upholding, at the summary judgment stage, the ejection of a spectator from a public meeting because he was "disrupting the proceedings by yelling and trying to speak when it was not time for" public comments). Similarly, discovery may very well reveal that any difference in the way Plaintiff was treated during the August 3, 2011 council meeting was rationally related to a legitimate governmental objective, thereby undercutting Plaintiff's class of one equal protection claim. *See, e.g., Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004) (finding no violation of equal protection clause at the summary judgment stage and noting that "[i]t is reasonable for a city to restrict the individuals who may speak at meetings to those individuals who have a direct stake in the business of the city—e.g., citizens of the city or those who receive a utility service from the city-so long as that restriction is not based on the speaker's viewpoint."). As such, although the Court declines to dismiss Plaintiff's first amendment and equal protection claims as against the Individual Council Defendants in their individual capacities at the pleading stage, Defendants may renew their qualified immunity argument at the summary judgment stage. *See generally Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary

judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."); *Newland v. Reehorst*, 328 Fed. Appx. 788, 791 (3d Cir. 2009) (cautioning that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."); *see, e.g., Larsen v. Senate of Com. of Pa., 154* F.3d 82, 94 (3d Cir. 1998) (declining to find that defendants were entitled to qualified immunity on First Amendment retaliation claims where inquiry could not be conducted without making "factual determinations as to the officials' subjective beliefs and motivations" and noting that resolution on the face of the pleadings was inappropriate).

## CONCLUSION

Based on the reasons set forth above, the Council Defendants' motion to dismiss the Second Amended Complaint [Docket Entry No. 29] is **granted in part and denied in part**.  Count Two may proceed in its entirety as to the Individual Council Defendants.  Count Four is dismissed *with* prejudice as to the Individual Council Defendants and the Highlands Council.  Count Five may proceed as to the Individual Council Defendants and is dismissed *with* prejudice as to the Highlands Council.  Count Six may proceed at this time.

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares
Jose L. Linares
Date:  July 8, 2014                                                                  United States District Judge