NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD F. DANIELSON, | CIVIL ACTION NO. 13-5427 (JLL) |
| Plaintiff, | **O P I N I O N** |
| v. | |
| CHESTER TOWNSHIP, et al., | |
| Defendants. | |

**LINARES, District Judge**

This matter comes before the Court upon the motion pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 56 for summary judgment by the following defendants: (a) Chester Township; (b) Ryan Steckel, who is a Chester Township police officer; and (c) Thomas Williver, who is a Chester Township police officer. (See dkt. 79 through dkt. 79-9; dkt. 89.)[1] The plaintiff, Harold F. Danielson, opposes the motion in part. (See dkt. 84; dkt. 84-1; dkt. 85; dkt. 86 through dkt. 86-9.)

The Court resolves the motion for summary judgment upon a review of the papers and without oral argument. See L.Civ.R. 78.1(b). For the following reasons, the Court grants the motion in part, denies the motion in part, and administratively terminates the motion in part.

---

[1] The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

# BACKGROUND

## I. Facts

The Court presumes that the parties are more than familiar with the underlying facts and procedural history of the action that the Court has set forth at length in three earlier Opinions, and thus the Court will only set forth a brief summary here. (See dkt. 8 & dkt. 9 (an Opinion and an Order dated November 19, 2013); dkt. 20 & dkt. 21 (an Opinion and an Order dated March 11, 2014); dkt. 36 & dkt. 37 (an Opinion and an Order dated July 9, 2014); see also dkt. 27 (the amended complaint).)

The Highlands Council (hereinafter, "the Council") held a public meeting on August 3, 2011. About thirty people were in the audience, including Danielson. Danielson was approximately seventy-three years old at the time, and he owned a parcel of land in an area that was being regulated by the Council. During the public-comment portion of the meeting, anyone wanting to address the Council was allotted up to three minutes to do so from a table (hereinafter, "the Table") at the front of the room. When it was Danielson's turn to address the Council, he left his seat in the audience, approached the Table, sat down at the Table, and started to speak. (See dkt. 79-4 at 5–12; dkt. 79-5 at 81; dkt. 79-6 at 41; dkt. 86-2 at 18.)

Certain members of the Council interrupted Danielson when he was several seconds into his comments. Danielson and those members of the Council then started yelling at each other, to the point where the meeting could not continue. The members of the Council directed Danielson to stop speaking and to return to his seat in the audience,

2

but Danielson refused. (See dkt. 79-4 at 14–15; dkt. 79-5 at 84–86; dkt. 86-1 at 17–18; dkt. 86-2 at 71; dkt. 86-5 at 24.)

Steckel was on duty in the meeting room, and he was watching this interaction. Steckel approached Danielson, and he directed Danielson several times to stop speaking and to return to his original seat in the audience. Danielson refused again. (See dkt. 79-4 at 17; dkt. 79-5 at 78–79, 85–89, 101–02.)

Williver, who was also on duty, then entered the meeting room and witnessed this interaction that now involved Steckel. While Steckel was still standing next to Danielson, Williver directed Danielson to return to his original seat in the audience. Danielson refused again. (See dkt. 79-5 at 25, 28, 37–38, 58, 90.)

Williver and Steckel then lifted Danielson up from the Table. (See dkt. 79-4 at 17; dkt. 79-5 at 33, 52–54, 90–91, 104.) Danielson alleges that Williver and Steckel pulled him up by his arms and twisted his arms behind his back, whereas Williver and Steckel testified in depositions that they lifted up Danielson from underneath his shoulders and placed his arms behind his back. (See dkt. 79-4 at 17–19; dkt. 79-5 at 28–31, 90.) Danielson was not handcuffed by Williver or Steckel. (See dkt. 79-5 at 34, 104; dkt. 86-3 at 35.)

Danielson alleges that Williver and Steckel then dragged him out of the meeting room for a distance of about 40 feet, and that he tried to catch up by using his legs. In contrast, Williver and Steckel testified in depositions that Danielson was walking as they guided him out of the room. (See dkt. 79-4 at 19–21; dkt. 79-5 at 28–30, 33–35, 90, 92, 96–97, 104.)

Several witnesses, including the chairman of the Council, provided testimony in depositions that agreed with a fair amount of Danielson's rendition of the facts. (See dkt. 86-1 at 22–26 (the testimony of a witness who supported Danielson's rendition); dkt. 86-2 at 22, 28–34, 40–41, 69–70 (the testimony of a second witness who supported Danielson's rendition); dkt. 86-3 at 18–25, 33–36, 45–48 (the testimony of a third witness who supported Danielson's rendition); dkt. 86-8 at 13–14 (the testimony of a fourth witness who supported Danielson's rendition); see also dkt. 86-5 at 34–37 (the Council chairman testifying that Danielson was pulled up by his arms, but that he was not dragged from the meeting room); dkt. 86-6 at 18 (a witness testifying that Danielson was pulled up by his arms, but that he was not dragged out); dkt. 86-7 at 31–33 (a witness testifying that Danielson was pulled up by his arms); dkt. 86-8 at 13–14 (a member of the Council testifying that Danielson's full weight was not on his feet while he was being removed); but cf. dkt. 86-9 at 29 (a witness testifying that Danielson was walking as Williver and Steckel removed him).)

The Council chairman testified in a deposition that he did not ask for Danielson to be removed from the meeting room. (See dkt. 86-5 at 37–38, 57–58; see also dkt. 86-8 at 27–28 (a member of the Council testifying that the chairman did not ask Steckel and Williver to approach Danielson).)

Danielson alleges that he immediately felt pain in his shoulders, back, and arms when he was outside of the meeting room, and that he suffered nerve damage, as well as damage to his rotator cuff, shoulder muscles, and right arm as a result of this incident. (See dkt. 27; dkt. 79-4 at 23.).

Steckel and Williver issued a summons to Danielson for disrupting a public meeting pursuant to N.J.S.A. 2C:33-8. (See dkt. 79-4 at 20–23; dkt. 79-5 at 39; dkt. 79-6 at 41–42.) Danielson was then driven by a third Chester Township police officer to a train station so that he could return home. (See dkt. 79-4 at 23; dkt. 79-5 at 68–69.) The local prosecutor eventually determined that there was no basis to prosecute Danielson for disrupting the meeting, and the charge was dismissed. (See dkt. 79-6 at 42.)

It is uncontested that Danielson's allegations comprised the first excessive force claims ever lodged against Steckel and Williver. (See dkt. 79-5 at 8, 75.) Furthermore, it is uncontested that Chester Township police officers, including Steckel and Williver, are trained semiannually on the use of force. (See dkt 79-5 at 13–14.)

## II. The Claims

Danielson asserts claims against Chester Township, Steckel, and Williver under 42 U.S.C. § 1983 and state law for: (1) false arrest; (2) excessive force; (3) malicious prosecution; and (4) cruel and unusual punishment. Danielson also asserts claims against Chester Township pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978) (hereinafter, "the Monell claim"). Chester Township, Steckel, and Williver now move for the entry of summary judgment in their favor concerning all of the aforementioned claims.

## STANDARD OF REVIEW

### I. Summary Judgment

It is not necessary for the Court to restate the standard for resolving a motion for

summary judgment made pursuant to Rule 56, because that standard has been already enunciated. See Fed.R.Civ.P. 56(a) (providing for an award of summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (setting forth the summary judgment standard); United States ex rel. Kosenke v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the summary judgment standard).

## II. Claims Concerning Malicious Prosecution, and Claims Concerning Cruel And Unusual Punishment

Danielson "withdraws his claims for malicious prosecution and cruel and unusual punishment." (Dkt. 84 at 13.) Therefore, the Court dismisses those two claims as being withdrawn, and administratively terminates the part of the motion for summary judgment concerning those two claims without prejudice.

## III. False Arrest

Police officers may not make an arrest without probable cause, and thus a plaintiff who brings a false arrest claim must show that he was unlawfully detained. See Holmes v. McGuigan, 184 Fed.Appx. 149, 151 (3d Cir. 2006); Marable v. W. Pottsgrove Twp., 176 Fed.Appx. 275, 280 (3d Cir. 2006); Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).

A police officer is entitled to qualified immunity from a false arrest claim if "a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Berg, 219 F.3d

at 272. The doctrine of qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). In determining whether a police officer is entitled to qualified immunity, the Court must ascertain whether it would have been clear to a reasonable officer confronted with the same situation that the conduct of the police officer in issue was unlawful. Id. at 199; see Elder v. Holloway, 510 U.S. 510, 516 (1994); Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

The Court finds that Steckel and Williver had probable cause to detain Danielson for disrupting the Council meeting. Steckel and Williver witnessed disruptive behavior by Danielson that had unfortunately devolved into belligerence, and Danielson repeatedly refused to abide by several requests to return to his original seat in the audience in order to permit the meeting to proceed. Perhaps Danielson could have sought some form of legal relief for not being allowed to continue to address the Council, but his refusal to abide by the direct requests of Steckel and Williver was not the correct course of conduct. See Taurus v. Bor. of Pine Hill, 105 Fed.Appx. 357, 358–60 (3d Cir. 2004) (affirming the district court's grant of summary judgment to a defendant police officer on a false arrest claim, where the plaintiff was arrested and charged with disorderly conduct when he refused to stop videotaping a municipal council meeting).

In any event, Steckel and Williver would be entitled to qualified immunity as to the false arrest claim as well. Danielson has failed to rebut the showing made by Steckel and Williver that reasonable officers could have believed that the decision to detain

Danielson was lawful. Danielson had become engaged in an exchange of shouting with the members of the Council, and then he refused several requests from the members of the Council, Steckel, and Williver to return to his original seat in order to maintain public order. Accordingly, the Court concludes that Steckel and Williver have demonstrated that reasonable officers confronted with the same circumstances that Steckel and Williver faced here could have concluded that detaining Danielson was lawful. See Brosseau, 543 U.S. at 199; see also Reyes v. City of Trenton, No. 05-1882, 2007 WL 1038482, at *6 (D.N.J. Mar. 30, 2007) (granting summary judgment to the defendant police officers on a false arrest claim, and holding that a court must remember that arresting officers, who often have to act on the spur of the moment, are not constitutional lawyers). Thus, even if the Court were to conclude that Steckel and Williver lacked probable cause to detain Danielson, Steckel and Williver would be protected from Danielson's false arrest claims by the doctrine of qualified immunity.

Therefore, the Court grants the part of the motion that seeks summary judgment on the false arrest claims in their entirety.

## IV. Excessive Force

A plaintiff alleging that a police officer used excessive force during the course of an arrest or a detention must demonstrate that the force used to effect that arrest or detention was unreasonable. Reasonableness is evaluated under the totality of the circumstances, i.e., whether the use of force by the police officers was objectively reasonable in light of the facts and circumstances confronting them without regard to

their underlying intent or motivations. See Bornstad v. Honey Brook Twp., 211 Fed.Appx. 118, 123 (3d Cir. 2007); Kopec v. Tate, 361 F.3d 772, 776–77 (3d Cir. 2004).

Danielson's right to be free from the use of excessive force during the course of his detention was clearly established in 2011 when Steckel and Williver acted here, and a reasonable officer would have known that employing excessive force in the course of that detention would be improper. See Tolan v. Cotton, 134 S.Ct. 1861, 1865–68 (2014). The focus of the excessive force analysis here is on the force allegedly used by Steckel and Williver to remove Danielson from the Council meeting room.

Viewing the evidence in the light most favorable to Danielson, the Court finds that there is a genuine issue of material fact as to whether Steckel and Williver utilized excessive force to remove the approximately seventy-three-year-old plaintiff from the meeting room. See Tolan, 134 S.Ct. at 1866 ("specific[ally]" warning district courts that are addressing whether a defendant police officer is entitled to qualified immunity against a plaintiff's excessive force claim to "not resolve genuine disputes of fact in favor of the party seeking summary judgment," because "[o]ur qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant"). Danielson testified that Steckel and Williver pulled him up by his arms and dragged him out. Several witnesses at the Council meeting agreed with Danielson's factual rendition of the incident. Indeed, the moving defendants concede that, "To be sure, the eyewitnesses to the event had varying accounts; some said that Mr. Danielson was 'dragged' down the aisle, while others said that he walked on his own volition." (See dkt. 89 at 2.) Furthermore,

Danielson testified that the act of pulling him up and dragging him out caused him to suffer several injuries.

While the use of more force may often be justified when a detainee is not compliant with the directions of a police officer, the record viewed in the light most favorable to Danielson indicates that a jury could find that Steckel and Williver used excessive force in order to detain him. Notably, an allegedly painful use of force, i.e., the alleged dragging of Danielson out of the meeting room, was utilized after Steckel and Williver had restrained him by placing his arms behind his back. Accordingly, the Court finds that an issue of fact exists as to whether Steckel and Williver violated Danielson's right to be free from the use of excessive force during the course of his detention and removal from the meeting room.

Furthermore, the Court concludes that Steckel and Williver are not entitled to qualified immunity at this juncture concerning Danielson's excessive force claims, because there are questions of fact as to whether the level of force used by Steckel and Williver was unreasonable given the circumstances. See Tolan, 134 S.Ct. at 1866–68 (concluding that a defendant police officer was not entitled to qualified immunity as a matter of law on a plaintiff's excessive force claim, because the lower court "clear[ly] misapprehen[ded] summary judgment standards in light of our precedents" by (a) "failing to credit evidence that contradicted some of its key factual conclusions," and (b) giving too much credence to the police officer's deposition testimony concerning whether the plaintiff was agitated and screaming).

Therefore, the Court denies the part of the motion that seeks summary judgment on the excessive force claims. Thus, the plaintiff's excessive force claims that are asserted in this action remain viable.

**V.      The <u>Monell</u> Claim Asserted Against Chester Township**

A municipality may be held liable for a civil rights violation that is caused by its police officer upon a showing that the municipality or municipal officials: (1) had adopted a policy, a custom, or a practice that caused the violation; (2) acted deliberately, or acted with deliberate indifference as to the known or obvious consequences; and (3) constituted the moving force behind the deprivation. See Monell, 436 U.S. at 690–91. Practices that are shown to be so permanent as to have the force of law are ascribable to municipal decision makers. See Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Furthermore, deliberate indifference can stem from government inaction, such as a municipality's failure to adequately screen those who are hired as police officers, or a failure to train police officers on avoiding the constitutional violation at issue, thereby leading to a pattern of such violations. See Wright v. City of Philadelphia, No. 16-1749, 2017 WL 1382408, at *3–6 (3d Cir. Apr. 18, 2017) (granting summary judgment in favor of a municipality concerning a plaintiff's Monell claim); Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249–50 (3d Cir. 2007) (granting the same). However, the submission of proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality under Monell. See Brown v. City of Pittsburgh, 586 F.3d 263, 292–93, 296 (3d Cir. 2009).

Chester Township has made a prima facie showing of its entitlement to summary judgment in its favor as to Danielson's Monell claims. First, its police officers received semiannual training concerning the use of force. Second, Danielson's claims constituted the first excessive force claims ever brought against either Steckel or Williver, and thus Chester Township was not on notice that either Steckel or Williver could be prone to using excessive force.

In response, Danielson offers nothing beyond mere conclusory allegations in support of his Monell claims concerning any official policy, custom, or practice. See Monell, 436 U.S. at 694. Furthermore, Danielson has offered no evidence of a pattern of constitutional violations either by Steckel and Williver specifically, or by the Chester Township police department generally. See Keahey v. Bethel Twp., Pa., 562 Fed.Appx. 119, 122 (3d Cir. 2014) (granting summary judgment to a defendant municipality on a Monell claim). Danielson's argument that Steckel and Williver might not have intervened had Chester Township educated its police officers on his right to continue to address the Council pursuant to Robert's Rules of Order is without merit. (See dkt. 84 at 8, 17.) The Court finds that any training that Chester Township could have provided to its police officers concerning Robert's Rules of Order would not have been relevant, because Steckel and Williver were confronted with a situation that appeared to be disruptive in a well-attended public meeting, and it was their duty to maintain order.

Therefore, the Court grants the part of the motion that seeks summary judgment on the Monell claims in their entirety.

## CONCLUSION

For the aforementioned reasons, the Court:

(1) administratively terminates the motion for summary judgment by the defendants Chester Township, Ryan Steckel, and Thomas Williver insofar as the motion concerns the malicious prosecution claims, and the cruel and unusual punishment claims;

(2) grants the motion insofar as it concerns the false arrest claims and the <u>Monell</u> claims; and

(3) denies the motion insofar as it concerns the excessive force claims.

The Court will enter an appropriate order and judgment.

_____
JOSE L. LINARES
United States District Judge

**Dated:** May 22nd, 2017